Good morning. Good morning, Your Honors. May it please the Court, I am Paul Vuksich, the attorney for the party in interest and appellant John Vuksich, who is also present in court today. I would like to, at the outset, reserve 15 minutes for rebuttal. As an overview, I am appearing in the consolidated case of which there are four appeals, but outside of the four appeals, there are two 28J letters of supplemental authorities which have been presented to the court. There are three requests for judicial notice that have been presented to the court, and there is a motion for remand that was also consolidated into the appeal. Before this court is the question of the correctness of the district court's dismissal as untimely in the Vuksich motion to dismiss. This is in Case 56695. Vuksich's motion to dismiss is not before this court today, but Vuksich believes the dismissal should be reversed, and the motion should be heard as a demonstration of bad faith by the debtor to the bankruptcy court. Bad faith and or an absence of subject matter jurisdiction is fatal to a Chapter 11 action. I have a question on the district court's dismissal of your appeal of the denial of your motion. Isn't that moot in the sense that my review of the record seems to indicate that you were able to argue in your subsequent appeals that the district court, one of the primary issues, that imaging three board lacked authority to file for bankruptcy, and therefore the bankruptcy court had no jurisdiction? We did get to file that, Your Honor, but the motions in the court below, in the bankruptcy court, included the grounds of bad faith, which was not addressed because the motion to dismiss was not heard at the district court level. What was your argument for bad faith? The bad faith, Your Honor, was going through the points that you bring up in a bad faith, basically that when we pointed out to the debtor that there was a way that they could gain relief from the… Right, and that's my point. Your bad faith argument was that you believe that some of the transactions were voidable because of not having a full board of directors, correct? That's part of it, Your Honor. Then we went on and we moved on to, when the help wasn't, the extended hand wasn't received, we went on to moving into the state court and my client was asserting his right. I guess my question is, like Judge Callahan's, those issues are now before us in this appeal. The question of whether or not the transactions were somehow invalid because the board wasn't completely staffed at the time, the other questions about whether or not the appeal deprived the court of jurisdiction, all are in front of us now. So I'm trying to figure out what's gained by sending something back to the district court to address your motion to dismiss when all the grounds for it are in front of us now. The court believes the grounds are in front of it now, then we don't have an objection to not sending it back on the bad faith issue. But if we rule on these issues one way or the other, it seems to me there's nothing left for the district court to do. Certainly not at the district court level and if you remanded it back for further instructions to the bankruptcy court, then that's a different matter. But this court has before it, if it has sufficient facts in its judgment to make those determinations. Let me ask again so that I'm clear. If the transactions that you challenge are valid or facially valid, do you have a bad faith claim? I'm not understanding. Which transactions? If the transactions that you believe were invalid because of an insufficient number of members of the board of directors are found by this court to be valid, do you have a bad faith claim? We do to the extent that we said that rather than let our governance issue, which is a direct right of my client, be decided in state court, to maintain control it was dragged into the bankruptcy court. Right, but I'm asking a legal question. Let's assume that we find that notwithstanding your argument that these transactions later having been reaffirmed by a full board are valid or not voidable. Do you have a bad faith claim? I mean, I'm asking because it's really the question, this preliminary question both Judge Callahan and I are focusing on. I think your bad faith claim presumes that there's something wrong with these transactions. And if we find that there is something wrong with the transactions, then you'll prevail on that. And if we find that there's not, then I'm not sure that you have a bad faith claim. So that's why I'm asking. We have a bad faith claim in the sense that there's no way for this board that lacked power of management to appoint a fourth board member, Bailey. Right, that's your governance claim. I understand it. And I want to get to the merits of that. But I guess my question is, doesn't your bad faith claim rise or fall with your governance claim? As to the technical details of getting into bankruptcy, that component may disappear. But the other bad faith is how they proceeded and why, their motivations for getting into bankruptcy, which is also in the record. Okay. I'm sorry, I didn't mean to take you off track. But it would be helpful to me then if you'd explain to me why. Let me just, let me posit a scenario for you. Let's assume that there were too few members of the board at some point. They appointed a fourth. But that by the time this case comes to us, a full board was appointed and they ratified prior actions. And I think that's what this record discloses. Why isn't that ratification sufficient to validate the prior actions? But I don't know in the record where anybody, any board has ratified the actions other than in the sense that the plan, somehow what you've got now is the plan and appointment of that board ratifying the fact that the board, the petition, filed the petition, didn't have authority to do that. And so what we're looking at is now, as I understand the law, the petition is the block point. Did the people who, under Price v. Gurney, did the people who presented that petition have the power to do it? Otherwise, my client could have continued to pursue his claims at state court level and got the board that he wanted, or any board that could properly install and then that board could decide if bankruptcy was the appropriate action. There's two separate questions here. Maybe I'm confusing the two. One was the authority of the board to file the bankruptcy petition. The other was the authority of the board to enter into certain transactions prior to the filing of the petition. With respect to that second issue, hasn't there been a ratification of those actions? I'm not sure what the court's asking me about transactions. Could you be specific? Sure. You claim that a bunch of transactions that occurred before bankruptcy can be avoided because, in your view, the board wasn't sufficiently, wasn't legal at the time. With each other so far? Yes. Okay. With respect to those transactions, not with respect to the bankruptcy filing, hasn't there been a subsequent ratification of those transactions by a full board? Not that I'm aware of. Not in the record, Your Honor. No. The record doesn't disclose that. It does not disclose that. Okay. Well, let me then take you while we're on. This is obviously a central issue to all of your appeals. Can you point to a case involving a California corporation where an act of the board of directors has been held void due to the failure to hold an annual meeting? My understanding, California Corporations Code 301B states that the directors, quote, shall hold office until the expiration of the term for which they are elected and until a successor has been elected and qualified, unquote. Why doesn't that language show that the Imaging 3 board have authority to file for bankruptcy  But, Your Honor, that line of reasoning is what has been brought up by the appellee. And the problem with that, it doesn't read the body of corporate statutes. And the main case is Burnett v. Banks, and they said by delaying or avoiding an election, you can't keep yourself in power. Well, Mr. Booksage had gone to the state court to So would you say that's your best case that stands for the proposition that where an act of the board of directors has been held void? Yes. That case, and there's one other case, the Supreme Court case, which is the 1800s case, which is Porter v. Lassen. Was that a California corporation? Was it involving a California corporation? Yes, it was. That's 127 Cal 261 at 268-1899. And they said that shareholders are entitled to have, when critical decisions are being made, they're entitled to have a full board. And up until the moment that the petition was filed, the day before, there were only three directors. And my client had, in May, attacked the validity of the board and the lack of an election, as he's allowed to do. There were four on the day it was filed, though, right? Pardon me? There were four directors on the day it was filed. That's what their minutes allege. Okay. Assume there were four directors. What's your case then? There are four directors that the three who filled one vacancy to get that majority didn't have, was an illegal board at the moment my client filed a state court action. I know you make that argument. I'm having a hard time understanding the basis of that argument. Isn't there a provision here that allows directors to fill a vacancy? There is, Your Honor. And I assume they followed that and filled the fourth. Now there was a quorum of the board, and under California law, a quorum of the board can act. So what's wrong with the action? What's wrong with the filing being authorized by four directors? Because it makes the case law of Burnett and Price. Your position is that there must be seven? The board must be filled at any time in order to take a quorum? No, Your Honor. What we're saying is that those three had lost power of management because my client had gone to the state court and was pursuing his remedy of demanding a state board. And that's what I'm asking. I'm not a California lawyer, thankfully, but I can't find any California authority for the notion that they lost all authority simply because you brought that action. What that action would have done was compel the filling of the board. But do you think they lost their authority to select the fourth member of the board because you brought that action? Well, there's two bases. Does the answer to my question yes? You think they lost the authority to fill a vacant seat on the board because your client had brought the California state board action? Yes, I do, Your Honor. Tell me what case you cite for that. The same cases that I've cited, Your Honor. That once my client was on the trail pursuing his remedies, then there's no longer an ability. When we're complaining about conduct, the very conduct we go to court to stop. So your position is that they lost the authority to remedy the problem that your client was complaining about? Yes. Okay. I had a question. It's going to a different issue. You conceded in your brief that four of the six claims in the state complaint are derivative. And the state complaint is labeled complaint, shareholders, derivative action. Under these circumstances, why did the bankruptcy court and the district courts err in determining that the gravamen of the state complaint was injury to a corporation rather than to your client as an individual shareholder? Because the court, they determined that it was basically a derivative suit. Can you point to any case where a shareholder has directly recovered damages for a corporation's failure to hold an annual meeting or for an action to remove a director? Or is it still the same cases that you're talking about? The same cases that I have, Your Honor. But they don't really, they're not on point. Would you concede that? I mean, you're sort of deriving an argument from them, but they're not, they don't, they're not, they're not on point. I respectfully disagree with the court. I think that they're directly on point. Do they award damages in this kind of situation? Oh, in the case of damages? To an individual shareholder as opposed to derivatively to the corporation. In the sense that my client was, complete violation of the business judgment rule. And my client then would have a claim for negligence against the corporation and the directors who acted. So in that sense, yes, he has a direct claim for damages. The two allegedly non-derivative claims, as I read your pleadings, are to compel an election and to remove the CEO. Why are those non-derivative claims? It seems to me they are sort of classic derivative claims. No, my client has an independent right under the code to compel an election, an annual meeting, when one hasn't been held. That's one of the causes of action. Now, to the extent that the bankruptcy court or the district court may have relied on the title of how the complaint was drafted, the fact is that it's a matter of law that each cause of action is found to be either derivative or direct. And frankly, by labeling it that way, I was wrong. It should have been that bringing derivative causes of action and direct causes of action. But the label shouldn't control here. So if I understand your argument correctly, you think that you should be entitled to go back to state court to bring a suit to fill the seven seats? To compel an election to fill the seven seats? That was outside of Title 11. That was dragged into bankruptcy court. Has that election already been held? There's been no election other than in the sense that a slate of directors was proposed in the plan, and they were approved by the court. So there's no election, but there is a court authority appointing a board. Well, that's my question. If there's a bankruptcy court order, a plan appointing the board, can you go back to state court and undo that? Wouldn't that be a direct attack on the bankruptcy court's jurisdiction? That certainly would be, Your Honor. But what we're saying is if this court dismisses the bankruptcy action, then we go back to state court, and we're back where we started. And then it'll go back to the 14,000 shareholders that have been dispossessed. They'll decide who they want their management to be, and then in due course, they'll do what any board does and act in the best interest, hopefully, of the corporation. I'm still not clear, and maybe you can help me on this. You make a Stern versus Marshall argument. Is this the same point you're just making now, which is, in other words, if the bankruptcy is not dismissed, aren't your clients' claims for sort of loss of stock value, et cetera, directly related to the bankruptcy? In other words, if Stern versus Marshall only works, of course, if the bankruptcy is still continuing. If the bankruptcy is dismissed, then we don't have to worry about it. But if the bankruptcy was not improperly filed, aren't your claims for loss of stock value sort of classic core claims as opposed to the kinds of claims that ought to be litigated in state court? Your claim of the loss is because of the filing of the bankruptcy, isn't it? It can be interpreted that way, Your Honor, yes. But that would be the Claim 23. But as to Claim 24, the only reason that we didn't prevail on Claim 24 was because the case was removed to bankruptcy. The substantial benefit, I mean, we do have, even through the bankruptcy court now, there is a board that's acting, and we change their conduct. And California law of substantial benefit is different from federal law, and we don't have to get to judgment in order to have forced the corporation to change its conduct. Now, I noticed in your, you argued that the bankruptcy court was divested of jurisdiction once your client filed his notices of appeal. How do you distinguish in Reese-Sherman a 2007 Ninth Circuit case? If the bankruptcy court in Reese-Sherman retained jurisdiction to enter an order discharging the debtor's debts, even though the SEC had already appealed the denial of its motion to dismiss the bankruptcy petition, why didn't the bankruptcy court here have jurisdiction to confirm the plan notwithstanding your client's notices of appeal? I mean, Sherman seems to present a problem for you on that argument. It does, Your Honor. Frankly, I'm at a loss right now to respond to the court. Okay, well, maybe you can think of something on rebuttal. Thank you, Your Honor. I want to go back to your claims 23 and 24, because I really have two separate sets of questions about them. These are claims you submitted to the bankruptcy court, correct? Yes, Your Honor. And now you're saying the bankruptcy court didn't have jurisdiction to determine them under Stern v. Marshall? We said that — I mean, isn't that kind of — you invoked the jurisdiction of the bankruptcy court to rule on these. How can you now claim that it didn't have jurisdiction to rule on them? Because I think under Wellness, Your Honor, it's apparent that we have no choice but to present these claims to the bankruptcy court. We reserved jurisdiction in the very claims that we filed. We objected to jurisdiction in the very claims that were filed. I want to ask you about claim 24, because you touched on it briefly before. What's our standard of review of — assuming that there's jurisdiction of the bankruptcy court's determination that your litigation in state court didn't confer a substantial benefit? We review that de novo, abuse of discretion. What's our standard of review? I think it's important. You're asking us to say that the bankruptcy court somehow erred in determining that this litigation activity didn't confer a substantial benefit under corporation. You make arguments about why a benefit was conferred. I want to know whether I'm free to just decide that the way I want or whether I have to determine that the bankruptcy court abused its discretion in coming to a contrary conclusion. It would seem that the bankruptcy court had to make some factual assessments, that there's sort of a subjective component to that in making that determination, which would put you in the abuse of discretion. I think that the — as I'm reflecting now on the court's order, I think the reasoning that the court used there was essentially that the claim was derivative and lost on that basis. But even if — the court just says in one sentence that it provided no substantial benefit, and that's the entire record. So if the court was wrong that it was a derivative claim, then you're saying it's de novo. But if the court was right that it's a derivative claim, then it's abuse of discretion? Is that what you're saying? I don't want to put words in your mouth. Thank you. Can I reserve that for rebuttal, Your Honor? Sure. Thank you. Why is the Bankruptcy Court's valuation of Imaging 3 clearly erroneous if the company still had not sold a single unit or achieved FDA approval at the time of the confirmation? Because the Bankruptcy Court relied on expert testimony. It relies on the testimony of Mr. James, who's the main actor in this. And we've submitted a request for judicial notice where he impeaches his own statement about the number of units that could be sold in what time frame. Plus, you have fair market valuation of what the public marketplace thought the technology was worth. And that lies completely in the face of what the evaluator came up with and the basis for how he came up with it. Was there contrary valuation evidence presented? Yes, Your Honor. We had an expert declaration from an expert who sells these machines and knows the technology intimately. And he said that with a run rate over five years on sales, that this company could easily be at $1,000 within five years. So we have two valuations, one done by one side, one done by the other, and the judge finds one more credible than the other. How do we review that decision? The jury had done it. We would say we would give a lot of deference to the jury who heard all the facts and made a decision. Why don't we give the same deference to the judge here? If you have an evidentiary, I understand that. But I'm just talking now about the choice between valuations. Isn't that, once again, one that we give a lot of deference to the trier factor? It is, Your Honor. But it's clearly in the record that what was relied on was not the evaluator's analysis of how many units could be sold, but they, quote, unquote, had to rely on what Mr. James told them. And the court was, even in its own transcript, indicates it's skeptical, but it's just relying on what Mr. James said. And Mr. James has got a vested interest in a low valuation because that essentially dispossesses the shareholders. You're under 15 minutes now. Thank you, Your Honor. I'll give you 15 minutes for rebuttal. Just, you were correct in not allowing someone to speak from the gallery here. But since we don't have a lot of cases today in this room at table, if you'd like, you can have your client at counsel table, if you'd like. But I'm going to say that we can't have people speaking from the audience. But I'm watching him write notes here if he wants to pass something to you at the counsel table. But you handled it correctly. But if you'd like him to sit up there, that's your choice. Thank you, Your Honor. Okay. So I'll allow 15 minutes for rebuttal then. Thank you. Good morning. Good morning, Your Honor. Your Honors, my name is Brian David. I'm the counsel for the appellee, Imogen III. Your Honors are aware that there are a number of issues strewn throughout these four appeals. And what I'll try to do is obviously address the questions that I've heard Your Honors ask counsel for the appellee. Let me start you out in that, you know, and then you can certainly use your time. But what should we make of the fact that the Imogen III board filed for bankruptcy right before the scheduled hearing in Mr. Vukic's state court litigation? What are the shareholders supposed to do if a board won't hold an annual meeting, if a board can block a suit under California Corporations Code Section 600C by filing for bankruptcy? I think I'm encapsulating what I understand to be some of the appellant's claims here. I understand the concern that the appellant has about that issue, but that is an issue that occurs in everyday life. It happens all the time that a creditor, a plaintiff brings an action against a party who on the eve of a trial, on the eve of a foreclosure, files a bankruptcy. Well, but it's a little bit different than a typical creditor claim. I understand when somebody to whom you owe a bunch of money brings a claim and you say, I want to head this off and get into bankruptcy and reorganize. Here the claim was, you're not following the California laws of corporate governance, and you head that lawsuit off by filing for bankruptcy. Different. So I guess I share Judge Callahan's concern. What are we to do in a situation like that? Your Honor, to put a few things in perspective, number one is, as we pointed out to the bankruptcy court, the district court, and as we pointed out in our papers to this court, this litigation was one of, unfortunately, several issues that were facing the company. When one looks at the question of bad faith, as the bankruptcy judge did, and that is a question of fact, the court obviously evaluated whether, under the totality of the circumstances, it was appropriate for this debtor to file or whether it was in bad faith. And it's rather clear that you had large debts. Nobody doubts that on this record. The company not only had large debts, but as is pointed out, the problem that the company got itself into, unwittingly, I think, is that it entered into these various financing agreements. And as a result of the share price decreasing, each time it decreased, it gave that particular shareholder a right to reduce their share price. And it got into what's called the debt spiral, which unfortunately is something that happens to small pink sheet trader companies. This lawsuit was then filed in the midst of all of that going on. And it's not as though, like, for example, in the Burnett case, and I'd like to get into that in a moment, where the board had never held a meeting. If the court recalls in this case, specifically, the bylaws of the corporation called for the corporation to have a meeting as of February 2012. April 2012, they hadn't held the meeting. Mr. Vucic made the demand that they hold the meeting. And a month later, he filed the lawsuit. It wasn't as though there had been years that had gone by. And that was one of the things that the Burnett court actually had talked about, that it was really an egregious situation where from the time of its formation, there had never been a board meeting. But as importantly, and I think this was a lot of the questions that the court was asking counsel, there are parallel provisions under the California Corporations Code. There is absolutely nothing. There's not a single case that says that the failure to hold a meeting results in a direct losing power. There's simply not a case that says that. There are a number of cases, and there is a statute, Section 301B, Section 600 of the California Corporations Code, which talk about the fact that if there isn't a meeting that's held at the appropriate time, the remedy is for an agreed shareholder to go into court to cause the superior court to force that meeting. Indeed, that is what this plaintiff did. So with respect to transactions that occurred pre-bankruptcy, what's the effect of not having a full board of directors? Is there any? In other words, if the president of the company enters into a transaction with a third party, and it turns out at the time there's not a full board of directors, does that affect the legality of the transaction? Your Honor, I'm not sure. That question is really not relevant to what's in front of Your Honors. I don't know. All other transactions... But we like other questions answered. Yeah. And what I think I'm going to say... See, and I think it's relevant in this sense. So let me rephrase your opponent's argument. Your opponent says, this is a bad faith filing because you had alternatives. These bad transactions, if you will, the ones that led to debts, were avoidable because you didn't have a full board. And if you'd only taken that route instead of filing for bankruptcy, things would be better. Maybe I'm making a different argument than he makes, but that's, I think, the one he's making. So tell me what the law is in California with respect to transactions entered into by a corporation whose board doesn't have the requisite quorum. The best I can answer that, Your Honor, is that I believe it was in the Burnett decision, but I could stand to be corrected. It was either in the Burnett decision or in the... I think it was in the Burnett decision where the court said that in that case, transactions had been entered into where there wasn't a full board, and that court drew a distinction between the effect of those transactions on the shareholders and the effect of those transactions on third parties and said that insofar as third parties are concerned, because the third party was relying on the apparent authority... Right, and I guess that was my question. I don't think, and this is one of the premises, I think, of your opponent's argument, I don't think you could get out of those transactions because you didn't have a full board at the time. You're stuck with them, are you not? That is what, again, I think it was the Burnett case, but I believe that is what that case said, if it was the Burnett case. And I guess my second question, I asked your opponent this. Were there subsequent ratifications by a board with a sufficient quorum of these transactions, or is that just simply the result of the reorganization plan? No, there was... That is not, I think Mr Bruksic was correct, that is not in the facts of this case. At the time of the bankruptcy filing, there was a board of four, there was a director, there was appointed by... And the record just doesn't reflect whether that board of four ratified prior transactions? I believe all that that resolution authorized was the filing of the bankruptcy. Of the bankruptcy. Yes. Okay. Mr Davidoff, you said earlier that the bankruptcy court considered the bad faith argument, that is, whether or not the petition was filed in bad faith, right? Yes. Okay, and that was in what context? Was that on the motion to dismiss? On the motion to dismiss. All right, now, but that motion to dismiss was never considered on the merits by the district court, right? Correct, because both motions to dismiss were denied as a result. All right. Untimely. All right, but it's still your position, nonetheless, that somehow the district court did consider the bad faith argument, or not? The district court, again, there's a lot of things that interweave. When Your Honor talks about bad faith, that's a very broad term, I think. If I might, Your Honor, is answer your question. Well, when I say bad faith, I'm speaking of the basis for the motion to dismiss. What the district court did consider was whether or not the board had jurisdiction. Let me restate that, whether the board had authority, because Freudian said there's a big difference between jurisdiction and authority. The bankruptcy court did consider whether the board had the appropriate authority to file the bankruptcy. So you consider the question of whether or not the board had the authority to act when it approved the filing of the petition as the only basis for the bad faith claim? Well, Mr. Vuksic does raise some of the other questions he stated from the podium, that it precluded him from going forward, that he should have had other rights that the company shouldn't have filed. There were other allegations that he had made. So I think that's what we were all a little bit getting at, whether it's this bad faith. If the district court, if we found that, you know, I asked, I think, in my first question, about why isn't that moot, because we're getting to all of the issues. Is there something we're not getting to because of what the district court did in the first instance? And I think Judge Hurwitz was trying to say, do you have a stand-alone bad faith claim, or is the bad faith claim based on everything else that we're going to address in all of the other motions before the court? Or is there something we're not going to reach? Is there a little kernel in there? Well, the bulk of the argument made by the appellants was the authority of the board. There were some allegations about other reasons. I will concede that to the court. But the bulk of the claim was… The other ones, and I'm trying to get to the other ones. Some of them, as I read them, were you should have walked away from these transactions or undid them because you didn't have a full board, and therefore you didn't have to file for bankruptcy because you didn't have this crushing debt that you thought you would have had. And that's one I think we can address because it's a legal matter. Were there others besides that? Your Honor, I'm not sure that that is a legal matter. I think that the finding of bad faith is… No, no, the question I think we can address is whether or not, and I asked you this question a moment ago, whether or not under California law having a short board, if you will, entitled the corporation to walk away from transactions with third parties. If we conclude it did not, and if we conclude that the bankruptcy was authorized by a quorum of the board, what remains of the bad faith claim? I don't believe anything, Your Honor. And that's what I'm… I think what we're trying to find out, whether there's other issues the district court didn't address or we can't address that are in the bad faith claim. I'm not telling you how we're going to rule on them. I'm just trying to figure out the parameters of the claim. You think that's the entire claim? I believe so, Your Honor. Again, to my understanding of the pleadings that were filed by the appellant, the bulk of them, at least on the dismissal question, were on the authority of the board. Your opponent spoke of the motive of those who filed bankruptcy. How does that relate to a bad faith claim? Let's assume that I have an entity that's got obligations in excess of its ability to pay, but I also don't like somebody who's bringing a lawsuit against me. Is it a bad faith claim if I have mixed motives? No, Your Honor. The traditional bad faith that's used in bankruptcy cases really wasn't an issue in this case, and there is a whole body of case law about the traditional bad faith, and the courts look at various indicia. They look at the timing of the filing. They look at where the insiders were involved. They look at whether there were a number of facts, a number of legal standards that actually weren't addressed by the appellant or addressed by the appellee because that really wasn't the issue here, whether there was a traditional bad faith filing. Really, the issue, again, that was asserted by the appellant was that the board never had authority because it lost its authority when the annual meeting came and went. That's the essence of the argument, and I do believe while there is, like in many of the other pleadings in this case, some scintilla of other facts, the predominant issue was the authority of the board. If this court were to rule, this court has everything in front of it, I think, that it needs to have in front of it. I don't want to take you out of order, but I'm interested in the insertion of the exculpatory language in the plan at a point when nobody can really vote on it or object to it. Tell me why that's appropriate. In the course of this bankruptcy case, obviously Mr. Vucic was very, very present, involved in every single matter. He was on the ECF filings. When the plan was filed, we briefed it. Well, first of all, the plan itself contained a discharge injunction, and that's in the plan, and I can cite to the court the place. Yeah, I know. What Mr. Vucic claims is that the provisions of the order, which contain an injunctive order together with the exculpatory order, should have been in the plan in the disclosure statement. As this court's aware, what both the bankruptcy court found and the district court found was that, correctly so, as a matter of law, Federal Rule of Bankruptcy Procedure 3016 requires that if there is an injunction which is not permitted by the bankruptcy code, then it must be in the plan in the disclosure statement. What both the bankruptcy court and the district court found was that the scope of these injunctive provisions were within the parameters permitted by the bankruptcy code, and to be specific. Section 1141 of the bankruptcy code permits an injunction – excuse me, permits a discharge injunction. That's exactly what the plan provides. There is a discharge injunction. The language that's in the order is no broader than the discharge injunction permitted by the code, and indeed one of the things that the bankruptcy judge did is he cut it back in certain circumstances because he felt it was too broad. He cut it back, for example, in connection with SEC regulatory proceedings. He felt that that was too broad. With regard to the exculpatory section, Section 1125E of the bankruptcy code has a specific statute, and that statute says that any party who participates in the formulation and the solicitation and the issuing of stock under a plan, if it's done in good faith and compliance with law, is entitled to the protection of not being sued for those activities. The language that was in the order was pursuant to Section 1125E, and so what both courts found was that the language did not go beyond that was permitted by the code and therefore was not necessary to be in the plan itself. You understand then the appellant's argument to be on this point that the scope of the injunction exceeded the provision of the code. Is that what you understand it to be? And only that? That's what I think the correct legal question is, Your Honor. I'm not sure that's exactly what the appellant's argument is, but I believe that that is the correct legal question. But you believe that's the question that brought into play by the appellant's contentions? Correct, yes. And does the clause says to the full extent permitted by various provisions of the code, I take it you interpret that to also mean to the extent that the code doesn't permit it, this doesn't exculpate anything? That was one of the other insertions that the bankruptcy judge made to ensure that the provisions fell within the permitted provisions of the bankruptcy code, 1141, Section 1125E. So we ought to interpret this as being no broader than those permitted by the code? That's correct, Your Honor. And I will say to the court that having broad discharge provisions are commonplace in bankruptcy cases. Now, in the Ninth Circuit, the court's aware that you can't have injunction against a third party. That's not permitted. That's Section 524E of the bankruptcy code. Delaware and other places, they do permit that. In the Ninth Circuit, that's not permitted. This plan doesn't contain a discharge injunction against other parties. It's against the debtor only. So you said, though, that that's how the legal issue should be framed, but you said you're not sure that's what the appellant's argument is. What do you understand the appellant's argument to be? I'm really not sure. Your Honor, to be quite honest, sometimes I can't fully understand the appellant's arguments, and we addressed it in our briefs the best way that we can based upon the legal issue. It seems to me there's only two ways to attack this. One is that it should have been part of the plan, and you've addressed that. And the other one is that even no matter how it arrived into the court's order, it's too broad, and you've addressed that, too. I think those are the only two possible attacks on it, aren't they? I believe so, Your Honor. What about the valuation? Obviously, we're used to seeing different valuations, and courts regularly look at those. These are extreme. I mean, one's like at a billion, and the other's just at a few million, the one that the judge ultimately selects. How do you explain that? Well... I mean, because usually they're different, but they're not that different. Think about the circumstances here, Your Honor. You have a company that is a startup company for all intents and purposes. It has a product that has not been approved by the FDA. It may be approved. It may not be approved. If it is approved, it may have a certain impact on the market. The evidence that was presented to the bankruptcy court was a voluminous appraisal by a professional appraisal firm. Appraisers, with regard to Mr. Vilksich's arguments that he relied upon Mr. James's projections of what the sales are, appraisers do that all the time. They evaluate it all the time, experts taking into account the opinions of others. So does the really high appraisal assume FDA approval and assume sales that the judge just felt that it wasn't a reasonable hypothetical? Is that how you justify... I mean, I'm just asking how... Yes, Your Honor, it is correct. Because, you know, when they're that far apart... And, in fact, what the bankruptcy judge, one of the issues in connection with that appraisal... Excuse me, in connection with the expert declaration or the purported expert declaration of Mr. Vilksich, when he asserted that it should be based upon a much greater number of unit sales, there was a rebuttal declaration of Mr. Cashion, who was the company's expert, which said, even if you take that as accurate, there's a number of assumptions that you can't assume what he says would come to pass. And he takes into account various discount issues. There's a variety of factors which he used. And the bankruptcy court, it was a two-day confirmation hearing. There were witnesses on the stand. There's really nothing in the record which shows this court a clear and convincing basis in leaving this court with a definite and firm conviction that there was an error by the trial court. The bankruptcy judge evaluated the evidence in front of him. Yes, it was far apart. The bankruptcy judge was intimately familiar with the case. He had lived with the case during the period of the bankruptcy. And it was his estimation and his... And there was one that the bankruptcy judge selected as the appropriate one. Well, there was one of the motions for judicial notice, I think, deals with that valuation. What is your best argument that we shouldn't take judicial notice? Well, the judicial notice I think the court's referring to is the 2009... But he said he wasn't doing it. Was it being used for impeachment? Or what was it being used for? It was apparently a 2009 recording by Mr. James of certain things that he said to shareholders at the time. So the first argument is, why wasn't it presented to the trial judge? I mean, this wasn't something new that came up afterwards. This was in 2009, number one. Number two is, the court's well aware that judicial notice of something new on appeal is... The court should take the record as it is. There shouldn't be a whole lot of new matter introduced on appeal. There's a whole lot of cases about that. The court's aware of that. And number three is, even if it were to be admitted, the question is, what's the relevancy of it? Is it authentic? Is it relevant? Is it authentic? It was in 2009. Why does it have to do with the coming out of bankruptcy? It seems to me the only fact we could take judicial notice of where we're going to take judicial notice is that these statements were made. We can't take judicial notice of the truth because it doesn't fall within the evidence rule. Most we could do is take judicial notice of the fact that this statement was made. And even then, Your Honor, it strikes me as difficult to understand how one can take judicial notice of something on a website of a company that it just is not the kind of thing that one typically takes judicial notice of. I don't think the process is correct. I don't think the request is correct. And I don't think the timing is correct. I want to go back to a question I asked your opponent. His contention, as I understand it, and maybe we don't understand it the same way, but let me try it, is that once he filed the California state action, the, let me call them the rump board, the three-member board, lacked any authority to appoint a fourth member. And he cites, as everybody cites for everything, the Burnett case for that proposition. Is that California law? Does the filing of the action keep the board from filling the vacancy? The filing of the lawsuit? Yeah, filing of the lawsuit in California court. That's, I think, your opponent's contention. At least that's what I asked him. He said that. That when they, when Mr. Vucic filed the California state action, seeking that the board, seeking an annual meeting and seeking an election, that the existing board members were thereby deprived of the authority to add the fourth member, the fourth member being the person that gave them a quorum to file the reorganization petition. If that's his argument, what's the California law on that? There was no staying place. The filing of a lawsuit doesn't suddenly have people stopping their tracks. He filed the lawsuit on a number of accounts. There was no injunction by a state court. There was no injunction. And is there anything in California statutory law that suggests that the filing of the suit deprives the board from remedying one of the problems that was identified? I'm certainly not aware of it, Your Honor. And to the contrary, one of the statutes that was cited, I think, in both briefs, but primarily our brief, is Section 305, which is a specific section that allows the board to appoint another member in the event of a vacancy. It doesn't say, it doesn't limit it. I mean, it does say that if the board fails to act at that point, that at some point the shareholders can do that. But Section 305 specifically allows the board. But until there's a court order saying the shareholders do it, the board retains the authority to do it? I'm not aware of any California law to the contrary, Your Honor. And I don't believe that the simple filing of a lawsuit can act as some level of injunction without a court order requiring that. Well, how do we review the bankruptcy court judge's determination that the state court lawsuit didn't confer a substantial benefit on the corporation? It does appear that many of the things that Mr. Vucic sought, filling the board, other things, doing away with the preferred stock, did occur as a result of the organization. One thing occurred, which is that there was another member appointed. Your Honor, I believe it is a factual question. I think it's clearly erroneous standard. It may be a mixed question of law and fact, but I don't think it's a legal question. I don't think it's a de novo question. A substantial benefit just sounds in the nature of something factual. And so to address the second point that your opponent brought up, he says the judge didn't find a substantial benefit simply because the state court suit hadn't proceeded to judgment. Is that right? That's one of his arguments. However, bear in mind, Your Honor, that there were six causes of action that were alleged. There was a director that filled the slot on one of them. Even looking at it at this point, whether that constitutes substantial benefit is a debatable question. But in any event, what the bankruptcy court also found was that it was largely – it was at least in part as a result of the Vucic litigation that the company landed up in a bankruptcy. So, again, based upon the multitude of facts in front of the bankruptcy court, it did not find that there was substantial benefit. And just – and I'll stop in a second, but I'm trying to get the chronology of this straight. The Vucic litigation is filed on what day? In, I believe, April – or May 2012. May 2012. And when is the bankruptcy petition filed? It was filed – I think I should know the answer to that, Your Honor. But how long thereafter? I'm going to say it was sometime later in 2012. I think it was June 2012. Okay. I thought it was within a month or so. I believe that's correct. Had anything happened in the state court litigation up to that point other than the filing of it? There was a motion by the plaintiff at that time for a judgment on the pleadings. Unless the court has any other questions, Your Honor, there is one thing I would like to kind of step back. And it predominates throughout all of the pleadings and the briefs on appeal, and I think it would be useful for me just to spend a minute on this whole jurisdictional argument. The appellant intersperses the question of board authority with the bankruptcy court's jurisdiction, and they really are two fundamentally different questions. There was also a question I think Your Honor raised about Stern v. Marshall. And just to step back, under 28 U.S.C. 1334, Congress gave to the district court original and exclusive jurisdiction over all bankruptcy cases. That is also under 28 U.S.C. section 157B1. However, for proceedings within a bankruptcy case, that is where the district court has original but not exclusive jurisdiction. So what 28 U.S.C. 157B2 does, it creates a series of proceedings which are considered as core proceedings, which supposedly the bankruptcy court is able to hear. And the court's well aware in this circuit and all the other circuits, there is a blanket order of referral of all the bankruptcy cases from the district court to the bankruptcy court. There's simply no question, in my mind, there's no legal question that the bankruptcy court had jurisdiction. Jurisdiction of the bankruptcy case was conferred under 28 U.S.C. 1334. And we're talking about claims 23 and 24 now. This is interspersed through every single… Right, I understand. But in particular, their Stern-Marshall argument is 23 and 24. But that's statutory jurisdiction. What is statutory? You said the bankruptcy court had jurisdiction. You're speaking only of statutory jurisdiction. Not the Stern versus Marshall question of constitutional jurisdiction. Right. But the distinction, an important distinction over here, is that what the trilogy of cases of Stern v. Marshall, Benningham, and Wellness talk about is not the jurisdiction of the bankruptcy case. They talk about the jurisdiction of these proceedings that are going on in the bankruptcy case in Title 11, what proceedings are going on.  It still doesn't get anywhere close to whether the bankruptcy court had jurisdiction over the bankruptcy case. It did. Now, with regard to his claim, I think you're going to raise the question. Mr. Bookstitch comes to the court and he files his proof of claim. Grand financiera and large-income, two Supreme Court cases. Once you file your proof of claim, you've submitted to the jurisdiction of the bankruptcy court. I asked your opponent that, and he said, well, I filed it, but I filed it under protest, if you will. It is a dilemma I faced, many other practitioners have faced. Are you going to file a proof of claim or are you not? But once you file it, it has these legal implications. In other words, you're invoking the jurisdiction of the bankruptcy court. You are. Stern v. Marshall dealt with whether or not the bankruptcy estate, which launched a counterclaim against a creditor, whether that was within the constitutional authority of the bankruptcy court. There was no claim that was asserted against Mr. Bookstitch over here. This was Mr. Bookstitch filing a claim in the bankruptcy case. So this whole discussion about Stern v. Marshall and wellness and Bellingham, it's just all of those deal with whether or not a claim that's asserted by the bankruptcy case in a civil proceeding in a Chapter 11 case or in a Title 11 case, whether the court has jurisdiction. And so I just thought it was important to clarify that because there is confusion, I think, in the appellant's papers about the authority of the board, meaning equating to the jurisdiction of the bankruptcy court. Your Honor, there are multiple— Let me ask you this. I mean, you obviously are very knowledgeable in the area of bankruptcy law, and you obviously have a client to represent. But let's just—I'm just trying to fit all of the appellant's arguments in this. If the court, this court, which we haven't discussed the case, so I'm just speaking hypothetically, if we were to find that the bankruptcy court, if he were to lose on, I would say, his biggest argument, if we said that the bankruptcy court had jurisdiction, he still has some other areas where he could win little parts, correct? I mean, or does everything in your mind fall on if the bankruptcy court had jurisdiction, but you just said Stern v. Marshall, that's a different argument. I mean, we could reach a different conclusion there, even though you've given our reasons why we shouldn't. But if we said the bankruptcy court had jurisdiction, what else remains of his arguments? And what—if you're looking at a roadmap. Well, if we go through the four appeals in front of you, Your Honor, the first one is the confirmation order. So the confirmation order, if you'll give me a minute, the confirmation order addressed— it addressed valuation, which I've talked about. It addressed this amnesty, which we've talked about, Section 1125 and 1141. It addressed a re-vote argument. There was—I don't know how much time you want me to spend on this here, Your Honor. There was a claim by Mr. Voogts, et cetera, that at the time the plan was confirmed, that it was still subject to being re-voted on by the creditors. In fact, what happened was that it was in connection with evaluation. And when the bankruptcy court found its value, that value was the premise on which the stock would be allocated and reallocated. In the bankruptcy plan, there was a provision that based the value of the company, I think, on $3.5 million. Ultimately, the court found $4.8 million. But the plan itself provided that in the event that the court were to reach a different valuation, then certain things would happen. But that's all in the plan. That was in the plan. The plan remains valid no matter what happens thereafter. The bankruptcy judge asked, do you need to re-solicit the creditors? Because if you are making a fundamental change to a plan, then you need to go back to the creditors. And my argument to the bankruptcy court was, no, Your Honor, this was already contemplated. The contingencies are covered by the court. Correct. So that's what I make of that argument. With regard to the motion to dismiss, well, I suppose if the court finds that the bankruptcy court had jurisdiction, the court could still theoretically find that the district judge was wrong in ordering the dismissal as untimely and then send that back. I suppose that's conceivable. Again, Your Honors, and I'm looking at my clock over here, the Federal Rules of Bankruptcy Procedure are very, very clear about what must happen on an interlocutory appeal. You've still got to appeal within 14 days. You just have to file your motion for leave to appeal at the same time, which may or may not be granted. While Mr. Bookstitch argues merger, that it merged into the confirmation order, the law that he cites is a non-bankruptcy case where there was a tightly interrelated issue. We've cited to the court a number of cases where the courts talk about bankruptcy cases as being really a multitude of different civil proceedings, and you can't wait for the final, final order before any order becomes final. I just don't think that there's any basis for that argument. I'm not clear also, and this is a question Judge Callahan asked at the beginning. What would we do if we accepted that argument? Would we be back into bankruptcy court for confirmation of the very same plan? I don't think so, Your Honor. I think the plan is still confirmed. That's what I mean. Once the plan is confirmed, I'm not sure where that argument takes us. I think that one might have been rendered moot by reason of the subsequent confirmation. You know that Mr. Bookstitch requested five attempts at a stay between the district court and the bankruptcy court. All of them were denied. Sometimes when a plan gets confirmed, certain things are rendered moot, and I think that might be one of them. We've talked about the proofs of claim which were disallowed. I think the final one is the abandonment where Mr. Bookstitch claimed that he sought that his lawsuit be abandoned. So that he could continue. Right. It's a strange sort of circumstance. The lawsuit is probably of no value, but the corporation retains it. Normally what happens is the corporation retains stuff that's of value and abandons stuff of no value. Here it seems to me it's retaining the lawsuit in order not to have to spend the money to defend it. Which was of significant value. Right. That's a strange sort of situation, isn't it? There are other fundamental misconceptions about the abandonment. Because what Mr. Bookstitch thought in petitioning the bankruptcy court to abandon is that somehow it would come back to him. Abandonment is a legal concept under Section 554 of the Bankruptcy Code which says that you can abandon something out of the bankruptcy estate back to the debtor. Because the estate and the debtor are two separate legal entities. It doesn't spring it from the bankruptcy estate back to some third party creditor. Well, but if it is a derivative suit, then perhaps the shareholder could then pursue it. Conceivably, but the court had already found that it was derivative. That's correct. But if it's abandoned, it would be abandoned to the successor, the new corporation, right? Well, in this case, what happened was, number one, it wasn't abandoned, but it was settled as part of the bankruptcy case. As part of the plan, the plan settled. No, but if it were abandoned, no, if the bankruptcy judge were to grant the request to abandon the lawsuit, it would be abandoned to the new corporation, wouldn't it? Because the old corporation no longer exists. Well, the... And then, here's the way I would follow through. And then if it's abandoned to the new corporation, then he could continue with his derivative suit against the new corporation. Your Honor, I think the answer to that... Isn't that what he wants? Well, he wants his lawsuit back, yes. But again, that lawsuit is... I mean, plus somebody to sue. But again, Judge Herjavec, to your question, I think that this is also one that is probably rendered moot by the plan because it's gone away. Well, again, I think the creditors in approving a plan could well say, no, we don't want... We don't want to approve a plan with a corporation that we know is still going to have to defend this kind of lawsuit. Unless the court would overturn the plan, I think, at least in this case, Your Honor, that there really is no... There is no effective relief that can be given. All right, are there any other questions? No, thank you. All right, thank you for your argument. I didn't think you would, but you used up all your time. Thank you very much. All right, there are 15 minutes remaining on rebuttal. Thank you, Your Honor. First, I'd like to return to the issue of the transactions and whether or not they would remain viable through ratification, whether those transactions are ratified. Well, put aside ratification because I think we've been told that there's a legal question here, but let's assume I'm a third party and I'm dealing with a corporation and I enter into a transaction that's signed by the president. Do I have to check and make sure there were enough people on the board before I can rely on the president's signature? The law in California, Your Honor, is you have to have two signatures in order for it to be automatically confirmed that the plan was signed. In fact... I'm not talking about the plan. I'm talking about the... I'm sorry. With respect to those, I entered a contract to supply widgets or loan money or whatever to a company and I get a signature by its president. Can I rely on that? No, you can't. Third party, I can't? No, you can't, Your Honor. In California, it takes two signatures in order for there to be an irrebuttable presumption under California law that the corporation entered into that contract. And who's the second signature from? Another officer. I think it's the CFO. Okay. Were there two signatures on these transactions? There were not. So your contention is because there was only one signature, these transactions were... Correct, Your Honor. In fact, these private placement agreements that were entered into, at least one set of them with the Cranchire people, they leased those private placement documents from someplace in New York. And when we raised this objection, they subsequently modified their work. I went to see if there was any reaction and there certainly was. They completely revamped the signature portion of their leased private placement documents that hedge funds use, based upon, I believe, the fact that we raised this law. As far as the issue of amnesty, what the district court and the bankruptcy court have said is that because of this reorganization, my client and every other shareholder under California law has lost standing to proceed on a derivative basis in the new corporation. And what we've argued to this court and to those courts is that there's no provision that says that we've automatically lost standing. That under California law, if you are a shareholder at the time that the claim arose and you are a shareholder at the time you bring the lawsuit, then you continue to have standing. And the issue is, is that at the time when the plan was confirmed, the issue was, well, suppose that Mr. James and his new owners quickly go and get FDA approval and all of a sudden we suddenly now have a billion-dollar corporation. What the shareholders should have the right to do is, since they do belong to the new corporation, to derivatively go to the new board and say, we want to sue past directors for malfeasance. That was the point. Now, if this court is willing to say, one, that my client did not lose standing, and two, that he has full derivative rights for prepetition conduct of the directors, then fine. But the way the bankruptcy order is written, as we pointed out in brief, I think exhaustively. But you want to sue, I take it what you really want to do is sue the directors of the old corporation? Yes, Your Honor. To restore money to what? I mean, if the derivative suit would restore money to something, it would restore it to the old corporation? Yes, it would. No, not to the old corporation. Well, that's my question. No. I've never heard of a derivative suit that restored funds to a new corporation. Can you tell me how that works? It's the, if we had standing to proceed derivatively. Yeah, presumably you would sue the directors of the old corporation for malfeasance of some sort. No, we would sue the new directors and say that because you retained rights in the new corporation to causes of action that arose in the old corporation. But doesn't that, isn't that precisely what the bankruptcy plan does away with? This is an asset of the corporation, after all. It's not your individual asset. It's an asset of the corporation. And the new corporation now has a fresh start. It's been through a bankruptcy plan of reorganization. I understand your argument that you get to sue the directors of the old corporation, but presumably you don't want that money to go into the old corporation. I don't understand how after the plan of reorganization, you retain a derivative claim against the directors of the new corporation for pre-petition conduct. Tell me how that works. Because in the bankruptcy plan, they retained that right to go after the old directors. But the fact is that they'll never do it because the people who are in control of the corporation right now are people affiliated with Mr. James. So they're just not going to go after Mr. James, who's after all is an inventor they need for this product. They're not going to go after him for any kind of malfeasance. And the plan precludes me from doing it, or my client rather, for doing it. But the malfeasance that you want to go after him for is not malfeasance in governance of the new corporation, correct? Correct. It's malfeasance in governance of the old corporation. It's correct that must be brought derivatively by the directors of this corporation. If they won't bring it, if I ask them to do it, they'll say no. And then what they do is then you have to proceed derivatively, but I can't, because one, the courts have told me that my client doesn't have standing any longer. And two... Well, I'm not sure what court has told you that. The district court. Have you attempted to bring a derivative suit against the directors of the new corporation? That I don't have standing to do, my client has been standing. Well, your client is a shareholder, is he not? He is. Okay. The new corporation has this asset that it's retained, which is the ability to sue the old directors. He is, correct. Okay. Why can't you bring a derivative suit against the new corporation for its failure to pursue, to use that asset? Because the bankruptcy court, I mean, the district court and the bankruptcy court said that when the new corporation was formed, that Vucic lost his standing. Lost his standing for the old lawsuit, to be sure. This is a new lawsuit you've never brought. He lost his standing for the new lawsuit if it ever comes up. And where does that say that in the order? It says it in the bankruptcy confirmation order. It says that you may not bring future lawsuits with respect to the future. Misconduct. Yeah, but now we're talking about different things. The misconduct that you seem to be describing now is the misconduct of the current board in failure to pursue this asset which it retained, which is a claim against prior management. I don't read the plan as saying you can't go out tomorrow and file that lawsuit. You'll probably lose, but that's a separate issue. Tell me where the plan says you can't pursue that lawsuit. I understand where you can't pursue the lawsuit for pre-petition conduct on your own, but this is not pre-petition conduct that you're talking about. It's talking about conduct post-petition by the new board, which has retained this asset because it didn't want to abandon it. And if you think that the board has made a mistake in not making the most of that asset, have at them. Tell me where the plan prevents you from doing that. The plan prevents my client from asking the new board to sue Mr. James for pre-petition misconduct as a director. Tell me where the plan says that. It's in the confirmation order. The confirmation order? It's also in the judicial notice in the AK. That's what they're telling everyone, is that nobody can sue for pre-petition misconduct of the director. Well, the board can. They've retained this asset. But I don't have standing when they don't do that. That's why I want them to abandon it so that I can do it because they won't. No, two separate issues. If they abandon it, maybe you could do it, but they haven't. And you're saying that the plan says that you can make no claim against the board for their failure to pursue it? Correct. Okay, I'll look in the plan for that. And in the AK. In ruling on the issue of whether the court on the motion to dismiss, the bankruptcy court proceeded on the basis, it said very affirmatively, that it did so on a core basis. It said that this is a core function of the bankruptcy side, of course. And under 28 U.S.C. 157, it isn't listed. Jurisdiction isn't listed as a core proceeding in front of where the bankruptcy court can decide that. And we're arguing, and have argued in our papers, that the issue of jurisdiction and subject matter jurisdiction remains with the district court. And that what should have happened is that this should have been treated as a non-core matter. And on that basis, that findings of fact and conclusions of law should have been prepared by the bankruptcy court and submitted to the district court for the final order that was necessary. Thank you. So are you talking about what I think is paragraph 24 of the confirmation plan? Do you think that's the one that prevents you from bringing an action for the future actions of the board? And I'm not asking you to correct me. Your Honor. Is that 24B? Can I leave the podium for a moment and check my... That's okay. I think I know what you're talking about now. I'm sorry. You ought to use the rest of your time. Your Honor, you asked me about the score case. Yes. It wasn't Sherman. It was score. And I can't find anything in the briefs addressed by either party about it. I'm just unprepared to respond to the court. At this time, Your Honor, I'll yield. Does the panel have any further questions? No. We don't have any further questions. Thank you both for your very helpful argument in this matter. These cases will now stand submitted. Thank you, Your Honor.
judges: Tashima, Callahan, Hurwitz